# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**CHARLES G. REITHER,**                                  Chapter 13
            Debtor                                       Case No. 17-13815-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**CHARLES G. REITHER,**
            Plaintiff
v.                                                       Adv. P. No. 18-1031
**PHILIP GODUTI, PETER KNOX, TRUSTEE
OF THE KNOX PENSION REALTY TRUST,
ORCA DEVELOPMENT LLC, CHRISTINE
GUARNIERI, BIRCH HOLLOW, LLC, and
MASSACHUSETTS PROPERTY INSURANCE
UNDERWRITING ASSOCIATION,**
            Defendants[1]

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are 1) the Motion for Sanctions filed by Philip Goduti

("Goduti") pursuant to which he seeks sanctions in the sum of $1,400.00, jointly and

severally, against Charles Reither (the "Plaintiff," the "Debtor," or "Reither") and his

attorney, William P. Brearley, Esq. ("Attorney Brearley"); and 2) the Motion of

Defendants, Peter L. Knox, Individually, and in his capacity as Trustee of the Knox

---

[1] The Court notes that the Plaintiff did not properly identify some of the Defendants and misspelled the name of Christine Guarnieri in the caption of his Complaint and First Amended Complaint.

1

Pension Realty Trust (collectively, "Knox"), for Sanctions against the Debtor and Attorney Brearley, jointly and severally, pursuant to Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, and the inherent powers of this Court to impose sanctions.

Goduti filed a two-page motion seeking sanctions because "the plaintiff's adversary complaint against him failed to state a cause of action and that the filing thereof was frivolous and, assuming arguendo that service of process was made, that said service was and is an abuse of process." Knox filed his motion, together with a 17-page memorandum, 22 exhibits, and two affidavits, namely his affidavit and that of his attorney Carmel A. Gilberti, Esq. ("Attorney Gilberti"), seeking sanctions in the sum of $28,361.25. Knox asserts that the Debtor and Attorney Brearley repeatedly supplied "patently false and misleading information to the Court, beginning with the Petition and continuing through pleadings and motions as well as with oral representations made in open Court at the hearing on May 17, 2018." In addition, Knox points to the following: 1) Brearley's use of an incorrect mailing address for Knox as reflected in numerous certificates of service filed with the Court; 2) the lack of evidentiary support for the adversary proceeding because the allegations were not the product of reasonable inquiry or investigation; 3) legal contentions made by the Plaintiff and Attorney Brearley that were unwarranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, or the establishment of new law; 4) conduct on the part of the Debtor and Attorney Brearley that unreasonably and vexatiously multiplied proceedings; and 5) lack of good faith.

The motions for sanctions were filed following a hearing conducted by this Court on May 17, 2018 in the main case with respect to the Objection of Orca Development, LLC ("Orca") to Confirmation of the Debtor's Second Amended Chapter 13 plan and in this adversary proceeding with respect to the status of the proceeding. At the hearing, the Court granted the Debtor's oral motion to dismiss his Chapter 13 case. In addition the Court dismissed the adversary proceeding as moot, adding: "The Adversary Proceeding shall remain open to permit any defendant to seek, if warranted, sanctions pursuant to Fed. R. Bankr. P. 9011 and/or any other applicable authority. Any such motion shall be filed by 06/22/18 at 4:30 PM."

As noted, Goduti and Knox filed motions seeking sanctions against the Debtor and Attorney Brearley in late June, 2018. Neither the Debtor nor Attorney Brearley responded to the motions. On August 9, 2018, this Court ordered the Debtor and Attorney Brearley to file responses to the motions within 14 days. The Debtor and Attorney Brearley filed their responses on August 14, 2018. Notably, they did not specifically admit or deny the facts set forth in the 31 separately numbered paragraphs of Knox's Memorandum. In addition, they did not challenge the itemization of fees and expenses set forth in an attachment to Attorney Gilberti's affidavit in which he provided the date he performed services together with a detailed description of the services performed and the applicable hourly rate.

## II. BACKGROUND

A. <u>The Debtor's Chapter 13 Case[2]</u>

The Debtor commenced a Chapter 13 case on October 14, 2017.  On his petition, he represented that his debts were primarily consumer debts. Local Bankruptcy Rule 1007-1(a) required Attorney Brearley to provide the Court with "an original matrix of all creditors and their last known complete addresses."  The original matrix [Docket No. 9], which the Debtor verified and Attorney Brearley filed with the Court on October 16, 2017, listed two creditors as follows:

    Law offices [sic] of Frank N. Dardeno, LLP
    424 Broadway
    Somerville, MA 02145

    Philip Goduti, as Trustee [sic]

The Debtor never disclosed whether he or someone else was represented by Frank N. Dardeno, LLP and a full address was not provided for Goduti.  On November 20, 2017, the Debtor filed an amended verified matrix [Docket No. 22] adding a single creditor, namely "Peter Knox, Knox Pension Realty Trust" with an address of "222 Walnut St. Newton, MA 02245."  That address was incorrect.

On October 16, 2017, the Court issued an "Order to Update," identifying documents that the Debtor was required to file.  In addition, the Order to Update

---

[2] The Court may take judicial notice of its own docket. *See* <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

provided that Attorney Brearley was required to supply the Court with his Board of Bar Overseers ("BBO") Number by October 30, 2017.

The Debtor obtained a 30-day extension of time within which to file his Schedules, Statement of Financial Affairs, Chapter 13 plan, and other required documents. On November 16, 2017 he filed the required documents under penalty of perjury.  On Schedule A/B: Property, he listed an "equitable interest" in 295 Lynnfield Street, Lynn, Massachusetts (the "Lynn Property") with a current value of $297,300.00.[3]  He also disclosed a "[p]ossible recovery from claims arising from wrongful foreclosure."  In addition, he represented that he did not own or have any legal or equitable interest in any business-related property or limited liability companies.[4]

On Schedule C: The Property You Claim as Exempt, the Debtor claimed a homestead exemption in the Lynn Property pursuant to Mass. Gen. Laws ch. 188, § 1.  On Schedule D: Creditors Who Have Claims Secured by Property, he listed Peter Knox and Knox Pension Realty Trust with an address of "222 Walnut St. MA 02245 [sic]" as the holder of a disputed claim in an unknown amount secured by the Lynn Property.  The Debtor listed no other secured creditors on Schedule D or any holders of unsecured

---

[3] The Debtor held title to the Lynn Property as Trustee of the Charles G. Reither Realty Trust.

[4] *See* note 4, *supra.*

claims on Schedule E/F: Creditors Who Have Unsecured Claims.  He disclosed no

codebtors on Schedule H: Your Codebtors.[5]

On Schedules I and J, relating to the Debtor's Income and Expenses, the Debtor

listed total monthly income of $3,129.00, including income in the sum of $660.00 from his

brother, Joseph Reither, and no home ownership expenses, such as a mortgage, related

to ownership of the Lynn Property.  He disclosed that his monthly net income was $25.00.

On his Statement of Financial Affairs ("SOFA"), the Debtor denied receiving any

income from employment or from operating a business during 2017 or for the two

previous calendar years.  He represented that his income was solely from Social Security

benefits.  On his SOFA, the Debtor also disclosed that the Lynn Property "was

purportedly foreclosed upon" by Orca on November 23, 2015, although as discussed

below, Knox was the foreclosing mortgagee. The Debtor set forth on the SOFA that

"Judge David Kerman of the Northeast Housing Court deemed this foreclosure void and

granted summary judgment for Defendant Charles G. Reither and Joseph Reither [sic]."

The Debtor filed, but did not serve, his Chapter 13 plan on November 16, 2017.  He

proposed to pay $25.00 per month for 36 months through his Chapter 13 plan.  In his

plan, he listed "Peter Knox" as the holder of a secured claim in the amount of $0.00 and

did not propose to pay a dividend to his creditors.  As noted above, on November 20,

2017, the Debtor moved to add Peter Knox and Knox Pension Realty Trust as creditors

---

[5] The Debtor's brother Joseph Reither and JCR Development LLC executed the mortgages discussed below. The Debtor executed the mortgages as general manager of JCR Development LLC.

using the following incorrect address:  "222 Walnut St. Newton, Ma. 02245." He served

his Chapter 13 plan on Knox on that date at that address, as well as the Law Office of

Frank N. Dardeno, LLP.  On November 22, 2017, the Bankruptcy Noticing Center served

the Notice to Added Creditors on Knox using the incorrect address.  Accordingly, Knox

did not receive timely notice of the deadline to file an objection to the Debtor's claimed

exemptions, the deadline for filing a complaint under 11 U.S.C. § 523, and the deadline

for filing a proof of claim, namely February 27, 2018.

On November 30, 2017, this Court dismissed the Debtor's Chapter 13 case for

failure to comply with the Order to Update.  Specifically the following documents were

not filed:   Attorney Brearley's BBO Number, the Attorney Disclosure Statement

(Director's Form B2030), Evidence of Current and Sufficient Liability and Property

Insurance, and the Chapter 13 Statement of Your Current Monthly Income (Official Form

122C-1).  On December 4, 2017, the Debtor moved to reconsider dismissal of his Chapter

13 case and filed the missing documents.  The Court granted the Debtor's Motion to

Reconsider Dismissal on December 5, 2017 and reinstated his Chapter 13 case.   On

December 8, 2017, the Debtor moved to amend Schedule C.  He listed Knox's address

correctly but served him by email. Knox in an affidavit, however, denied receiving any

filings by email, including the Debtor's responses to objections to confirmation filed by

the Chapter 13 Trustee and Orca.

On January 31, 2018, the Debtor moved to amend Schedules E/F, I and J.  He

amended Schedule E/F to add Birch Hollow LLC as the holder of an unsecured claim in

an unknown amount relating to a commercial loan.  On the same date, he filed a First

7

Amended Chapter 13 plan through which he proposed to pay $50.00 per month for 36 months. He continued to list Knox's claim at $0.00 and proposed to pay unsecured creditors nothing.[6] Although he and Attorney Brearley correctly listed Knox's mailing address on the certificates of service filed with respect to his amended Schedules and First Amended Chapter 13 plan, Attorney Brearley served Knox by email and, as noted above, Knox denied receipt of those emails.

Following the reinstatement of the Debtor's Chapter 13 case, the Chapter 13 Trustee and Orca, who claimed to be "a bona fide, arms-length purchaser at a foreclosure sale, for value and without notice of defect, or alternatively [as] the assignee of a mortgage on 295 Lynnfield Street, Lynn, MA . . . by operation of law," objected to both the Debtor's claimed homestead exemption for the Lynn Property[7] and his First Amended Chapter 13 plan.[8] The Chapter 13 Trustee eventually withdrew her objection to the Debtor's claimed homestead exemption. Orca's objection to the Debtor's claimed homestead was

---

[6] Eventually, two creditors filed proofs of claim: Verizon by American InfoSource LP and the Massachusetts Department of Revenue.

[7] In its 46-page objection to the Debtor's claimed homestead exemption in the Lynn Property, to which it attached eight exhibits, Orca noted that the Debtor did not disclose his interest in a trust on Schedule A/B, adding that the Debtor is the trustee and beneficiary of a self-settled trust, namely the Charles G. Reither Realty Trust, and that the Debtor conveyed the Lynn Property to the realty trust on March 12, 1996. In its homestead objection, Orca also outlined the chain of title as well as the liens encumbering the Lynn Property. Orca filed that objection on December 29, 2017, approximately two months before the Debtor commenced the adversary proceeding.

[8] In its objection to confirmation, Orca stated that, following the foreclosure sale, it paid past due real estate taxes in the amount of $17,343.29, as well as current real estate taxes, water and sewer charges, insurance and costs of snow removal.

consolidated with the adversary proceeding that the Debtor commenced on March 7, 2018.  Orca also obtained extensions of time within which to file a proof of claim.

The Chapter 13 Trustee objected to confirmation of the Debtor's First Amended Chapter 13 plan asserting that it was not feasible because the Massachusetts Department of Revenue had filed a proof of claim and "there are other unsecured claims filed which are not provided for in the plan."  Orca objected to the First Amended Chapter 13 plan on good faith and feasibility grounds, *see* 11 U.S.C. § 1325(a)(3) and (a)(6), stating the following:

> The Amended Plan should not be confirmed because the state of the Premises' title has not been determined and therefore the Premises may not be an asset of the Estate:  Orca claims to be a bona fide purchaser for value, or alternatively Orca contends it is a holder of the Mortgage and Note [from Knox] by assignment.  *The Amended Plan fails to provide for any payment whatsoever to Mr. Knox or Orca.  Further, the Debtor has failed to provide for other creditors in the Amended Plan, including Mr. Goduti and the taxing authority.*

(emphasis supplied).  The Court sustained both objections on March 27, 2018 and ordered the Debtor to file a further amended Chapter 13 plan by April 16, 2018.  In the meantime, however, the Debtor commenced the instant adversary proceeding.

The Debtor filed a Second Amended Chapter 13 plan on April 3, 2018 with no references to either Orca or Goduti.  Although he correctly listed Knox's address on his certificate of service, he again served Knox by email. Through his Second Amended Chapter 13 Plan, the Debtor in Part 3.B.1 sought to modify the secured claim of "Peter Knox."[9]  With respect to the amount of Knox's secured claim, the Debtor stated:

---

[9] Official Local Form 3, the Chapter 13 plan which must be used in this district for all plans filed after December 1, 2017, provides:

"Disputed (See Adversary Proceeding No. 18-01031)" and for "Total Claim" he provided:

$0.00," concluding: "Total Claim(s) under Part 3.B.1 to be paid through this Plan:  $0.00."

In Part 5 of his Plan, he stated: "None" with respect to Unsecured or Undersecured

Claims after Modification in Part 3.B or 3.C."   Accordingly, the Debtor did not propose

to pay Knox anything either as a secured creditor or as an unsecured creditor.   In

addition, he failed to provide for any secured claims, contingent or otherwise, held by

Goduti or Orca.

The Chapter 13 Trustee moved to dismiss the Debtor's case one day after the

Debtor filed his Second Amended Chapter 13 plan, representing, among other things,

that the Debtor was "in arrears according to the terms of the plan totaling $225.00, which

is equal to 4.50 month(s) of plan payments."   Orca also filed an objection to confirmation

---

The Debtor(s) requests that the Court determine the value of the lien of the following secured claim(s). For each secured claim listed below, the Debtor(s) states that the amount of the secured claim is as set out in the column headed "Secured Claim Amount." For each listed claim, the allowed amount of the secured claim will be paid in full with interest at the rate stated below, and the creditor will retain its lien to the extent of the value of the lien securing the creditor's allowed secured claim.

***

An allowed claim of a creditor whose claim is secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of the creditor's interest, and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of the allowed claim. The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim in Part 5 of this Plan. If the secured claim amount is listed below as having NO value, the creditor's allowed claim will be treated in its entirety as an unsecured claim in Part 5 of this Plan.

of the Debtor's Second Amended Chapter 13 plan.  In its objection, it reiterated its prior

arguments and observed the following:

> . . . Mr. Knox has been listed as a creditor in this Chapter 13 but has not
> filed any appearance or other document in this proceeding.

> . . . Orca was not listed as a creditor or as an interest-holder in the Premises,
> Note or Mortgage on any of his Schedules or in the Second Amended
> Chapter 13 Plan.

> . . . Incidentally, on January 17, 2014, the Debtor also granted a second
> mortgage on the Premises to Mr. Goduti recorded in said Registry of Deeds
> at Book 33072, Page 596. Upon information and belief, Mr. Goduti has not
> assigned the second mortgage to Mr. Knox or any other party. The Debtor
> has failed to name Mr. Goduti as a creditor in this Bankruptcy. Upon
> information and belief, the second mortgage to Mr. Goduti is in default. Mr.
> Goduti began foreclosure proceedings against the Debtor. The Plan fails to
> address the Debtor's defaulted mortgage to Mr. Goduti.

> . . . There are currently outstanding real estate taxes on the Premises. The
> Second Amended Plan fails to address these.

(footnotes omitted).  The Court scheduled Orca's objection to confirmation for hearing on

May 17, 2018.  It was at that hearing that the Debtor made an oral motion to dismiss his

Chapter 13 case, which the Court granted.

At the May 17, 2018 hearing, the Debtor acknowledged that Knox had not filed a

proof of claim and that he had not timely filed a surrogate proof of claim on behalf of

Knox, Orca, or Goduti.[10]  In this regard, Knox was not properly served with the petition,

---

[10] As noted above, Orca obtained extensions of time within which to file a proof of claim.
On February 16, 2018, at a hearing on Orca's objection to the Debtor's claimed homestead
exemption, the Court granted Orca an extension of time to file a proof of claim to April
17, 2018.  Orca subsequently sought a further extension of time to the conclusion of the
adversary proceeding.

the Chapter 13 plans, or the adversary complaint.  Initially, the Debtor incorrectly listed

Knox's address as 222 Walnut Street, Newton, Massachusetts when his correct address

was 222 Walnut Street, Brookline, Massachusetts.  Even when he used the correct address,

however, the Debtor, through Attorney Brearley served the Chapter 13 plans and

complaint on Peter Knox, individually, instead of in his capacity as trustee.[11]  Moreover,

Orca was neither listed as a creditor nor served with the Chapter 13 plans.

B. The Adversary Proceeding

1. The Complaint and Amended Complaint (collectively the "Complaint")[12]

The Debtor filed his Complaint on March 17, 2018 and his Amended Complaint

on April 13, 2018.  The proof of claim deadline was February 27, 2018 and the surrogate

proof of claim deadline was March 29, 2018.

Through his 13-page Complaint, the Debtor sought "clarification" relative to the

following:

> 1.) the judgment of the housing court is res judicata, 2.) a certain foreclosure
> auction is void, 3.) a certain sale at auction to Defendant Orca Development
> LLC is void, 4.) legal, equitable, and record title are currently in the name
> of mortgagor, Plaintiff, Charles G. Reither as Trustee of the Charles G.
> Reither Realty Trust, 5.) a certain mortgage given by Orca Development
> LLC to Christine Guarnier [sic] . . . is a legal nullity and void, 6.) the real

---

[11] The Debtor improperly served the First and Second Amended Chapter 13 plans on
Knox by email, although by that time he had corrected the address.  Neither the Federal
Rules of Bankruptcy Procedure nor the Massachusetts Bankruptcy Local Rules provide
for email service on non-lawyers.

[12] The two complaints are virtually identical. The only difference is that the Amended
Complaint correctly identified Knox in his capacity as trustee.  In his Amended
Complaint, Attorney Brearley did not correct the numerous drafting errors, including
duplicate paragraph and count numbers, as well as grammatical mistakes, contained in
the original Complaint.

party in interest with standing to assert a claim on the debt, 7.) a request to review and value claims pursuant to Bankruptcy Rule 3012, and Code Section 506, 8.) Procedures were properly conducted in the foreclosure of the Peabody property and settlement of claims with property insurer [sic].

The Debtor in his Complaint alleged the following facts which the Court now paraphrases.

According to the Plaintiff, on March 12, 1996, fee title to the Lynn Property was in the name of Charles G. Reither as Trustee of the Charles G. Reither Realty Trust by instrument recorded at the Essex South Registry of Deeds in Book 13451, Page 248. On June 25, 2013,[13] Reither, as Trustee, granted a mortgage securing payment in the principal amount of $30,000.00 to Goduti, as Trustee of the Profit Sharing Plan Master Trust. On January 17, 2014,[14] Reither, as Trustee, granted a mortgage securing payment in the amount of $10,000.00 to Goduti, as Trustee of the Profit Sharing Plan Master Trust. Both of these loans were cross-collateralized and secured by a second parcel of real property in Essex County located at 284 Lynn St. Peabody, Ma. 01960 (the "Peabody Property"). According to the Debtor, "[t]he mortgagee was in second position on the Peabody property, and first position on the Lynn Property. Peabody was a commercial development project, Lynn was at all times Plaintiff's primary residence [sic]."[15]

---

[13] This is the date the mortgage was recorded. It was executed by the Debtor on June 24, 2013.

[14] This is the date the mortgage was recorded. It was executed by the Debtor on January 15, 2014.

[15] As discussed below, the mortgage expressly provided that the Lynn Property was not used for personal or family use.

The Debtor represented that the loan was a "commercial loan agreement" containing language customary in non-residential, commercial type loans, adding "[n]otwithstanding, Defendants secured the lien against Plaintiff, mortgagor's primary residence in Lynn.  Plaintiff has a Declaration of Homestead pursuant to Massachusetts General Laws c. 188 . . . ."

On or about August 25, 2014, according to the Plaintiff, a fire occurred at the Peabody Property resulting in a total loss.

The Plaintiff alleged that, on November 12, 2014, Goduti, as Trustee of the Profit Sharing Plan Master Trust, recorded an assignment of the $30,000.00 mortgage to Peter L. Knox as Trustee of The Knox Pension Realty Trust.  In addition, he alleged that, on May 26, 2016, a Notice of Intent to foreclose mortgage seeking authority to proceed under the Servicemembers Civil Relief Act was recorded with respect to the Lynn Property.

The Plaintiff further represented that, on or about August 22, 2016, Birch Hollow, LLC commenced litigation in the Middlesex Superior Court to recover insurance proceeds with respect to the Peabody Property.

According to the Plaintiff, on November 2, 2016, a purported auction occurred "attempting to foreclose on the Lynn Property." He added that, on January 4, 2017, a Foreclosure Deed was recorded purporting to grant title to the Lynn Property to Orca. On January 4, 2017, Orca attempted to grant a mortgage on the Lynn Property to Christine Guarnieri, in the principal amount of $150,000.00.  Thereafter, on January 17, 2017, Orca commenced a summary process action in the Northeast Housing Court seeking to evict Plaintiff from the Lynn Property.  The Plaintiff alleged that, on April 24, 2017, Judge

14

David Kerman "granted summary judgment to this Plaintiff, Defendant in the eviction

action."  According to the Plaintiff, the order provided:

> In this post-foreclosure summary process case, I allow the defendants'
> motion for summary judgment and deny the plaintiff s cross motion  . . . as
> the foreclosure notice dated October 4, 2016 did not include 'the recording
> information for all recorded assignments' as required by Gen. L. c. 244, §
> 14, as amended by St. 2012Ch.194 Secs. 1, 9, effective November 1, 2012.  See
> my rulings in <u>Property Acquisition Group v. Lynch</u>, N.E  Hsg. Ct. No. 13-
> SP-2257 (August 27, 2014).

The Plaintiff further averred that Orca issued a Notice of Intent to Foreclose on

September 21, 2017 "purporting to hold a second auction at the Lynn Property on October

17th [sic], 2017" and that, on October 14, 2017, he commenced his bankruptcy case,

thereby staying the second auction.

Based upon the foregoing allegations, the Plaintiff formulated six, improperly

numbered counts as follows:  Count 1 – "Judgment of Housing Court has Res Judicata

Effect;" Count II [sic] – "Foreclosure is Void" [sic]; Count III [sic] – "Foreclosure Deed

into Defendant Orca Development is Void. Title remains vested in Mortgagor/Plaintiff"

[sic]; Count 3 [sic] – "Mortgage lien in the name of Christine Guarnieri . . .  is void" [sic];

Count 4 – "Valuation of security pursuant to Federal Rule of Bankruptcy Procedure 3012

and the real party in interest with standing to assert a claim on this debt" [sic]; and Count

5 – "Foreclosure and settlement of insurance proceeds pursuant to G.L. c. 175 § 99 on 284

Lynn St, Peabody was proper and in good faith" [sic].[16]

---

[16] The relief requested by the Debtor in Count 5 related to the Peabody Property and
litigation commenced by Birch Hollow, LLC against JCR Development, LLC.  The Debtor
did not claim an interest in the Peabody Property or disclose an interest in JCR
Development, LLC on Schedule A/B.  Although there appears to have been a fire at the

Through Count I, the Debtor sought a ruling that "[t]o the extent Defendant Orca development [sic] wishes to raise a claim that they are a bona fide purchaser for value, or any other such claim or defense they [sic] will be precluded/estopped from doing so by the doctrines of res judicata and claim preclusion." The Debtor also asserted that "[t]his issue was raised and decided upon in the previous action," namely a summary process eviction action commenced by Orca in the Northeast Housing Court in which the court determined that a foreclosure notice published by Knox did not include "'recording information for all recorded assignments.'"

Through Count II, the Debtor sought a ruling that "[t]he purported foreclosure on 295 Lynnfield St. in Lynn is statutorily defective, a court of competent jurisdiction has given a final judgment on the merits of this issue after a trial in which all parties were present. The attempted foreclosure is void." Through Counts III, 3 and 4, the Debtor

---

Peabody Property, the Debtor in his Complaint did not set forth how Birch Hollow, LLC "improperly gutted the value of the Peabody property, thereby usurping the recovery of junior interests," or how that affected him. He alleged that Birch Hollow, LLC continues "to seek a deficiency balance on this debt [sic]," and that "[t]he junior interests, being asserted in this Chapter 13 case never pursued recovery from the Peabody Property." He adds: "Rather, they actively seek to foreclose the Debtor's primary residence in Lynn. MPIUA [Massachusetts Property Insurance Underwriting Association] has failed to honor its contractual and statutory obligations pursuant to G.L. c 175 § 99 and has thereby left Debtor vulnerable" [sic].

The Debtor appears to complain that MPIUA failed to pay Birch Hollow, LLC and Goduti as loss payees and that Knox, as the junior secured creditor on the Peabody Property, failed "to pursue its claim as loss payee under the insurance proceeds has left Debtor vulnerable [sic]." As a result, the Debtor requested "clarification."

As neither MPIUA nor Birch Hollow, LLC sought sanctions against the Debtor or Attorney Brearley, the Court need not discuss whether this count was so poorly pled as to be unintelligible and frivolous.

claimed that Orca had no interest in the Property to convey to Christine Guarnieri.   In

addition, he sought a declaration, pursuant to Fed. R. Bankr. P. 3012 and 11 U.S.C. § 506,

as to the value of "this claim purportedly secured by estate property and the real party

in interest on the debt."   He averred that Orca has "no standing to make a claim on this

debt" and that it should "seek to be recompensed and seek rescission of the transaction

from Knox," adding that the attempted foreclosure and auction sale produced a surplus

exceeding the amount of the debt, noting "[t]he original creditor, Peter Knox remains

flush with $140,000 on a debt in the original amount of $30,000." The Debtor also

requested "an itemization of the debt as provided in Bankruptcy Rule 3012 and

clarification of the real party in interest with standing to make a claim on the debt."   As

noted above, at the time the Debtor filed the adversary proceeding, the proof of claim

deadline of February 27, 2018 had passed.   Moreover, the Debtor did not file a surrogate

proof of claim on behalf of Knox or any other individual or entity.   *See* Fed. R. Bankr. P.

3004; MLBR 13-13(b).   Therefore, Fed. R. Bankr. P. 3012 would be inapplicable.[17]

---

[17] Rule 3012 provides in pertinent part the following:

> (a) Determination of amount of claim

> On request by a party in interest and after notice--*to the holder of the claim*
> and any other entity the court designates--and a hearing, the court may
> determine:

>> (1) the amount of a secured claim under § 506(a) of the Code;
>> or . . .

> (b) Request for determination; how made

In support of the allegations in his Complaint, the Debtor attached two mortgages encumbering the Lynn Property: one dated June 23, 2014 securing the $30,000.00 note in favor of Goduti as Trustee of the Profit Sharing Plan Master Trust and the other dated January 15, 2014 securing a $10,000.00 note.  Both mortgages were executed by Reither, individually, and as Trustee of the Charles G. Reither Realty Trust, by JCR Development, LLC, by its general manager, Reither, and by Joseph Reither.  The June 24, 2013 mortgage provided:

> THE BORROWER COVENANTS AND REPRESENTS THAT THE MORTGAGED PROPERTY IS NOT NOW BEING USED FOR PERSONAL OR FAMILY USE AND THE BORROWER HAS NO PRESENT INTENTION OF USING THE MORTGAGED PROPERTY FOR PERSONAL OR FAMILY USE.  THE USE OF THE PROPERTY BY THE MORTGAGOR FOR PERSONAL OR FAMILY USE, SPECIFICALLY INCLUDING BUT NOT LIMITED TO THE USE OF THE PROPERTY AS A DWELLING BY THE MORTGAGOR OR ANY MEMBER OF HIS FAMILY SHALL BE A BREACH OF THE TERMS OF THIS MORTGAGE AND PERMIT THE MORTGAGEE TO IMMEDIATELY FORECLOSE AND/OR ACCELERATE THE MORTGAGE OBLIGATION WITHOUT NOTICE.

The Debtor also attached an Assignment of Mortgage, dated August 5, 2013, pursuant to which Goduti, as Trustee of the Profit Sharing Plan Master Trust, assigned the June 24, 2013 mortgage to Peter L. Knox, as Trustee of the Knox Pension Realty Trust.  The

---

> Except as provided in subdivision (c), a request to determine the amount of a secured claim may be made by motion, in a claim objection, or in a plan filed in a chapter 12 or chapter 13 case. When the request is made in a chapter 12 or chapter 13 plan, the plan shall be served on the holder of the claim and any other entity the court designates in the manner provided for service of a summons and complaint by Rule 7004. A request to determine the amount of a claim entitled to priority may be made only by motion after a claim is filed or in a claim objection.

Fed. R. Bankr. P. 3012 (emphasis supplied).

Assignment set forth Knox's correct address as 222 Walnut Street, Brookline, Massachusetts.

In addition to the mortgages and the Assignment, the Debtor attached a Foreclosure Deed from Knox, as Trustee of the Knox Pension Realty Trust, to Orca dated November 17, 2016; a mortgage on the property executed by Orca in favor of Christine Guarnieri to secure a $150,000.00 note; the docket sheet from the summary process action commenced by Orca in the Northeast Housing Court on January 17, 2017 against the Debtor and Joseph Reither; a copy of the order of Associate Justice David D. Kerman granting a motion for summary judgment in favor of the defendants because the foreclosure notice dated October 4, 2016 did not include the recording information for all recorded assignments.

### 2. The Defendants' Responses to the Complaint

Goduti promptly sought dismissal of the Complaint as well as judgment on the pleadings, observing correctly that there was no adequate service of process upon him in his capacity as trustee and that there was no specific relief sought against him, or any facts alleged that would entitle the Plaintiff to a judgment against him.

Orca and Guarnieri filed an Answer and Counterclaims. They observed that the Northeast Housing Court did not rule on whether Orca was a bona fide purchaser for value without notice, or whether it is an assignee of the Knox mortgage. Through its Counterclaims, Orca alleged that, if the foreclosure sale by Knox was invalid, the invalid Foreclosure Deed converted to an assignment of the first mortgage on the Lynn Property to Orca by operation of law, particularly where as Knox, after the foreclosure sale,

19

assigned the $30,000.00 note to it, and that Orca commenced its own foreclosure proceedings with a foreclosure sale scheduled for October 17, 2017, a sale date which precipitated the commencement of the Debtor's Chapter 13 case on October 14, 2017.

On April 6, 2018, Knox, individually, moved to dismiss the Complaint, asserting that he was not the proper party as he should have been named in his capacity as Trustee of The Knox Pension Realty Trust and there was insufficient service of process because he was not named in the summons or served with the summons and Complaint in his capacity as trustee. The Plaintiff opposed the Motion challenging Orca's standing as a bona fide purchaser. In addition, he attached, as Exhibit A, a letter from Barsh and Cohen, P.C., dated January 20, 2017, approximately two weeks after the date of the Foreclosure Deed from Knox to Orca. In that letter, the law firm referenced a surplus of $18,439.87 after deductions from the sale proceeds of $141,000.00. The Debtor contended that "[t]o date, Defendant Knox has not refunded surplus funds," adding "[i]f Knox and Orca are in the position of assignor/assignee of this debt, 'by operation of law', as Orca asserts in their Counterclaim, Knox cannot properly be continuing to collect under terms of the note."

MPIUA moved to dismiss the Amended Complaint as well.[18]

---

[18] MPIUA stated in its Motion:

> While it is not readily apparent that any of Plaintiff's claims are directed at MPIUA, the gist of Plaintiff's Complaint is that he was allegedly harmed because a third party pursued recovery of cross collateralized debt against property located at 295 Lynnfield Street, Lynn, Massachusetts (the "Lynn Property") instead of asserting rights as a subordinated mortgagee under a MPIUA insurance policy on property located 284 Lynn Street, Peabody,

3. The Plaintiff's Motion for Summary Judgment

On April 30, 2018, the Debtor moved for summary judgment as to Count I, II, III, and 3, relying almost exclusively on the legal argument that the decision of the Northeast Housing Court was res judicata as to the issue of title to the property.  The Debtor asserted that the foreclosure sale conducted by Knox was void; that title to the Lynn Property remained in the Debtor; that the mortgage granted by Orca to Christine Guarnieri was void; and that Orca was not a bona fide purchaser because of the defect in the October 4, 2016 foreclosure notice.  He also requested "a determination of the amount owed on this debt and the real party in interest to assert a claim."  The Debtor did not include a Concise Statement of Material Facts or otherwise comply with MLBR 7056-1.  In addition, he did not set forth any payments that he made, or caused to be made, on the note. The Debtor merely argued the following:

> Orca is, upon information and belief, a developer of real property who purchased a defective interest in property at a void foreclosure auction. They [sic] have demonstrated a failure to conduct reasonable due diligence. This does not entitle them to an "assignee status" by operation of any law. The purported assignor, the Defendant Peter Knox [sic], upon information

---

Massachusetts (the "Peabody Property"). In other words, while Plaintiff takes issue with the third party's actions, he does not actually assert any claim against MPIUA. In fact, the Plaintiff was never an insured under or party to the MPIUA policy, and has no standing to assert a claim against MPIUA.

Furthermore, Plaintiff asks this Court to "review and clarify" state law claims asserted under the MPIUA policy which are currently pending in a state court civil action. As discussed herein, the Court lacks subject matter jurisdiction to decide these state law claims pending in state court and therefore must abstain from adjudicating – or "reviewing and clarifying" – those claims. As a result, MPIUA respectfully requests that Court dismiss all counts of the Complaint as against MPIUA.

and belief continues to avail himself of rights and remedies under the note. As alluded to in Plaintiff's Opposition to Defendant Peter Knox [sic] Motion to Dismiss Adversary Proceeding . . . continues to retain surplus proceeds from the auction to fund collection of the defaulted debt [sic]. Two entities are collecting from the same debt, Orca and Knox. Both claiming to be obligee's of the note [sic].

Plaintiff asserts neither conceivable obligee of this note has filed a proof of claim. As provided for in FBRP 3012 [sic], Debtor has a right to seek valuation of any creditor claiming secured status and should be afforded an opportunity to dispute such claim. Debtor request [sic] herein, a determination of the real part in interest [sic] on this debt, and an order requiring that party file a proof of claim affording Debtor, Plaintiff herein review of the claim.

## III. THE REQUESTS FOR SANCTIONS

### A. Goduti

Goduti, without referencing any applicable Bankruptcy Rules or statutes, seeks sanctions because the filing of the Complaint was frivolous. Goduti seeks $1,400.00 for his time, as an attorney, in responding to the Debtor's Complaint.

### B. Knox

Knox, in his request for sanctions, which he supported with his affidavit and that of Attorney Gilberti, states that "[t]hrough correspondence to Reither prior to the Bankruptcy Petition and from Brearley after the Bankruptcy Petition but months before the Adversary Proceeding both were informed of Knox's mailing address." Nevertheless, Knox states that Attorney Brearley served the Debtor's Chapter 13 plan on him using the incorrect address and that he never received service of the Debtor's Chapter 13 plans. In addition, Knox notes that, on November 22, 2017, the Court served the Notice of Added

Creditors on Knox using the incorrect address supplied by Attorney Brearley and that he

never received that Notice, individually, or as Trustee of the Knox Pension Realty Trust.

Although Knox acknowledges that, by mid-December 2017, Attorney Brearley

began using the correct mailing address, he represents that he never received service of

any of the Chapter 13 filings as stated by Attorney Brearley in the certificates of service

for the following:

> Motion to Amend Schedule C filed 12/8/17;
> Debtor Response to Trustee Objection to Claim of Homestead Declaration
> filed 1/4/18;
> Debtor Response to Trustee Objection to Confirmation filed 1/4/18;
>  Debtor Response to ORCA Development, LLC Objection to Confirmation
> filed 1/4/18;
> Debtor Response to ORCA Development, LLC Objection to Claim of
> Homestead Declaration filed 1/5/18;
> Motion to Amend Schedules I, J and F filed 1/31/18;
> Debtor's First Amended Chapter 13 Plan filed 1/31/18;
> Debtor's Motion to Amend Plan filed 2/8/18;
> Debtor Response to Trustee Objection to Confirmation filed 3/1/18,
> Debtor's Second Amended Plan filed 4/3/18; and
> Debtor Response to Trustee Motion to Dismiss filed 4/11/18.

As noted above, although the Debtor eventually began setting forth Knox's correct

address on certificates of service filed by Attorney Brearley, Attorney Brearley served

Knox by email.  Knox in his affidavit states: "Brearley stated in his several Certificates of

Service identified above that he also served the filing upon Knox via email, however,

Knox never received any filings via email."

Knox, in seeking sanctions, also states that the filing of the Complaint caused him

to retain counsel, who responded with a Motion to Dismiss supported by a Memorandum

of Law.  He also notes, correctly, that the claims and legal arguments presented in the

Amended Complaint are identical to those in the Complaint with the exception that in paragraph 6 of the Amended Complaint the Debtor substituted Peter L. Knox as Trustee of the Knox Pension Realty Trust as the defendant and as the "purported assignee" of the mortgage on the Property.

Knox also challenges the contents of "Plaintiff, Charles Reither Response/Opposition to Defendant Peter Knox Motion to Dismiss Complaint" arguing that it contained facts and legal arguments having no bearing on Knox's Motion to Dismiss in which he asserted that individually he was not the proper party, there was insufficient process against the proper party, and there was insufficient service of process against the proper party.[19]   Knox faults the timing of the filing of the Debtor's Motion for Summary Judgment, arguing that it was filed prior to the deadline for Knox to respond to the Amended Complaint, adding that the Plaintiff failed to meet the procedural requirement of providing a concise statement of the material facts of record.

Based upon the above deficiencies, Knox argues that the Debtor and Attorney Brearley failed to make reasonable inquiry as to facts presented to the Court in the petition, Schedules, motions and oral representations, made false and misleading representations knowing that they lacked evidentiary support, and advanced legal

---

[19] As noted above, in the Opposition, the Debtor contended that Knox was holding surplus proceeds from the foreclosure sale for which he has not provided an accounting, citing Mass. Gen. Laws ch. 183, § 27.  Indeed, the Debtor stated:  "To date, Defendant Knox has not refunded surplus funds.   If Knox and Orca are in the position of assignor/assignee of this debt, 'by operation of law', as Orca asserts in their Counterclaim, Knox cannot properly be continuing to collect under term of the note."

arguments that were unwarranted by existing law.  Knox contends such conduct violates

Fed. R. Bankr. P. 9011 and "unreasonably and vexatiously multiplied proceedings in

violation of 28 U.S.C. § 1927."   Further, Knox argues that the Debtor and Attorney

Brearley acted in bad faith, subjecting themselves to the Court's inherent authority to

sanction their misconduct.   Knox relies upon Castellanos Grp. Law Firm, L.L.C. v. Fed.

Deposit Ins. Corp. (In re MJS Las Croabas Props., Inc.), 545 B.R. 401, 418 (B.A.P. 1st Cir.

2016) (quoting Sunshine Three Real Estate Corp. v. Housman (In re Sunshine Three Real

Estate Corp.), Adv. No. 09–01330, 2010 WL 1541428, at *2 (Bankr. D. Mass. Apr. 15, 2010)),

for the proposition that "[t]he bankruptcy court has the power to sanction . . . pursuant

to (1) Fed. R. Bankr. P. 9011; (2) its inherent power; and (3) 28 U.S.C. § 1927."

    C. The Debtor's Responses

    The Debtor contends that Goduti is not entitled to sanctions because Goduti did

not comply with Rule 11 safe harbor provisions.  That argument overlooks the Court's

order dated May 17, 2018 permitting the defendants to seek sanctions, as well as this

Court's order dated August 9, 2018.

    With respect to Knox's motion for sanctions, the Debtor and Attorney Brearley

contend that the petition was filed at the last minute to avoid Orca's foreclosure sale and

"[e]mergency action needed to be taken to preserve the Debtor's home," even though in

the June 24, 2013 mortgage he represented the Property was not going to be used for that

purpose.   Attorney Brearley and the Debtor aver that Attorney Brearley "undertook

diligent efforts to understand the facts, circumstances and various legal issues in this

matter."  Attorney Brearley also states that he

> agreed to represent a debtor in need of bankruptcy relief.  Virtually no time existed for adequate due diligence.  Complex legal issues are present in this matter.  Painstaking efforts were made to obtain, interpret, and apply current case law to existing facts and circumstances.  Only at that point the legal issues were digested [sic], through substantial research and consultation with colleagues, did counsel file the adversary proceeding.  Counsel took action he thought necessary to protect the interests of this Debtor, in good faith.

In addition, the Debtor and Attorney Brearley set forth all the legal issues that they contend remain unresolved, including

> legal standing, proper compliance with foreclosure statute and enforceability of a prior judgment will be front and center at the housing court again.  Was the note and mortgage properly assigned [sic] as this transaction appears to have occurred post invalidation of the first attempted foreclosure?  Is the decision of the prior summary process case *res judicata*?  Did title, mortgage and debt revert back to the original parties?  What is the status of the mortgage lien given to Christine Guarnier [sic] by Orca Development?  What is the amount owed on this debt?  To whom is this debt owed?

Attorney Brearley acknowledges, however that "this particular complaint abrogates from the basic legal pleading standard of notice pleading.  As it requested declaratory relief, more detail than usual was intentionally pled to lay out the arguments, and provide adequate notice of the allegations of opposing parties."

With respect to Knox's particular examples of sanctionable conduct, Attorney Brearley states that "[h]aving a wrong address to a litigant does not equal bad faith or sanctionable conduct.  In fact, lack of proper service is an affirmative defense, not sanctionable conduct."  In addition, Attorney Brearley avers that "good faith efforts were made and adequate investigation conducted to address complex legal issues that existed at the time of filing, and remain today."  He adds: "Not only are the advanced arguments

not 'frivolous' or 'negligent' they are necessary for determining legal status and title to assets of this bankruptcy estate, are necessary for Debtor's effective reorganization under Chapter 13 of the Bankruptcy Code, and are core proceedings under 28 U.S.C § 157."

## IV. DISCUSSION

A. <u>Applicable Law</u>

Bankruptcy Rule 9011(c) permits the bankruptcy court to impose sanctions in the event subsection (b) of the rule has been violated.  Rule 9011(b) provides in pertinent part:

(b) **Representations to the Court**.

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Bankr. P. 9011.  *See also* <u>In re Withrow</u>, 391 B.R. 217, 227 (Bankr. D. Mass. 2008), *aff'd*, 405 B.R. 505 (B.A.P. 1st Cir. 2009).[20]  As Judge Hillman observed in <u>Hermosilla v.</u>

_____

[20] In affirming the bankruptcy court, the bankruptcy appellate panel stated:

[A]ny attorney who files schedules and statements on a debtor's behalf makes a certification regarding the representations contained therein. Although the certification is not an absolute guaranty of accuracy, it must

Hermosilla (In re Hermosilla), 450 B.R. 276 (Bankr. D. Mass. 2011), *aff'd,* No. MB 11-045,

2011 WL 6034487 (B.A.P. 1st Cir. Nov. 14, 2011),

> Under Fed. R. Bankr. P. 9011, the focus is not whether the claim asserted
> was frivolous, but whether the attorney conducted an adequate inquiry into
> the facts and law before filing the claim. "Put bluntly, a pure heart no longer
> excuses an empty head." The First Circuit has explained that:
>
>> Prior to signing a pleading, a litigant must fulfill the
>> "affirmative duty to conduct a reasonable inquiry into the
>> facts and the law." [Business Guides, Inc. v. Chromatic
>> Communications Enterps., Inc., 498 U.S. 533, 111 S.Ct. 922,
>> 933, 112 L.Ed.2d 1140 (1991)]. Whether or not this duty has
>> been breached depends on the objective reasonableness of the
>> litigant's conduct under the totality of the circumstances. *See*
>> id.; *see also* Lancellotti v. Fay, 909 F.2d 15, 18–19 (1st Cir. 1990).
>>
>> To determine whether a litigant made a reasonable inquiry
>> into the facts, the district court should examine all the
>> circumstances, including the complexity of the subject matter,
>> the party's familiarity with it, the time available for inquiry,
>> and the ease (or difficulty) of access to the requisite
>> information. *See* Brown v. Federation of State Medical Bds.,
>> 830 F.2d 1429, 1435 (7th Cir.1987); Century Prods., Inc. v.
>> Sutter, 837 F.2d 247, 250–51 (6th Cir. 1988); Thomas v. Capital
>> Sec. Servs., Inc., 836 F.2d 866, 875 (5th Cir. 1988) (en banc); *see
>> also* Fed. R. Civ. P. 11, Advisory Committee's Notes, 97 F.R.D.
>> 198, 199 (1983). Litigants, like counsel, are to be held "to
>> standards of due diligence and objective reasonableness-not

---

be based upon the attorney's best knowledge, information and belief,
"formed after an inquiry reasonable under the circumstances." Nosek v.
Ameriquest Mortg. Co. (In re Nosek), 386 B.R. 374, 381 (Bankr. D. Mass.
2008). The First Circuit has held that the standard to be applied is "an
objective standard of reasonableness under the circumstances." Id. (quoting
Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990)). "Courts, therefore, must
inquire as to whether 'a reasonable attorney in like circumstances could
believe his actions to be factually and legally justified.'" Id. (quoting Cabell
v. Petty, 810 F.2d 463, 466 (4th Cir. 1987)).

In re Withrow, 405 B.R. at 512.

> perfect research or utter prescience." <u>Maine Audubon [Soc. v. Purslow</u>], 907 F.2d [265,] 268 [1st Cir.1990]. Furthermore, for Rule 11 purposes, a party's pleading must be judged on the basis of what was reasonable when the pleading was filed rather than in hindsight. *See* <u>Cruz v. Savage</u>, 896 F.2d 626, 631 (1st Cir. 1990); Davis v. Crush, 862 F.2d 84, 88 (6th Cir. 1988).

> With this in mind, it is clear that "[a] violation of Rule 11 . . . might be caused by inexperience, incompetence, willfulness, or deliberate choice."

<u>In re Hermosilla</u>, 450 B.R. at 290–91 (footnotes omitted).

This Court, as Knox recognizes, has inherent authority to impose sanctions. *See* <u>Charbono v. Sumski (In re Charbono)</u>, 790 F.3d 80, 87 (1st Cir. 2015); <u>Gwynn v. Walker (In re Walker)</u>, 532 F.3d 1304, 1309-10 (11th Cir. 2008); <u>In re Amaral</u>, 567 B.R. at 423-26. Moreover, under appropriate circumstances, the Court may impose sanctions under under 28 U.S.C. § 1927.  That section provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  *See generally* <u>In re MJS Las Croabas Props., Inc.</u>, 545 B.R. at 418–19.

B. <u>Analysis</u>

The issue presented by the motions for sanctions can be simply stated:  At what point does an attorney's failure to adhere to basic precepts of bankruptcy law and procedure become sanctionable?   Stated another way, was Attorney Brearley's incompetence, ignorance, and/or flagrant inattention to bankruptcy laws and rules sanctionable, particularly as he certified to the best of his knowledge, information, and belief, that the petition, matrix, Schedules, Chapter 13 plans, Complaint and First

Amended Complaint were filed after reasonable inquiry under the circumstances as to the evidentiary and legal basis for their contents?  The answer to the second question is "yes."

The Court observes that the Debtor's original and amended matrices, petition, Schedules, and Chapter 13 plans contain numerous errors, omissions, and inaccuracies and lack any semblance of integrity.  Moreover, the Complaint, even after amendment, failed to state cogent and cognizable claims for relief based upon the facts alleged, particularly where the deadline for filing claims, including surrogate claims, had passed and, in the absence of filed claims, the Debtor's plan was futile.  *See* MLBR, Appendix 1, Chapter 13 Rule 13-13(a) ("All secured, priority, or unsecured creditors of the debtor must have an allowed claim in order to participate in distributions under the plan.").  Indeed, the Complaint was a poorly pled jumble of facts and virtually unintelligible legal theories. In addition, the Plaintiff's Motion for Summary Judgment failed to comply with MLBR 7056-1 which incorporates D. Mass. LR 56.1, and served merely to delay the proceeding.[21]

---

[21] That Rule provides:

> Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by

The Debtor and Attorney Brearley failed to file a matrix containing the names and correct addresses of the Debtor's unsecured and secured creditors.  The secured creditors could have been readily ascertained from a title search of the Lynn Property at the Southern Essex Registry of Deeds or from an examination of the pleadings filed in the Northeast Housing Court eviction proceeding.   For example, the Assignment of Mortgage dated August 5, 2013 contained Knox's correct mailing address and the Foreclosure Deed contained the correct mailing address for Orca.  Nevertheless, Attorney Brearley employed an incorrect address for Knox, and, even when he set forth the correct address, served Knox by email, although MLBR Appendix 1, Chapter 13 Rule 13-4(b) and OLF 3A require service by first class mail.  The Court concludes there can be no legitimate excuse for such egregious oversights in view of the ready availability of the addresses for all parties with potential interests in the Lynn Property, including Knox, Orca, and Goduti.

In this regard, the Debtor and Attorney Brearley demonstrated a lack of awareness of the definitions related to "creditor" ("an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"), and "claim," ("right to payment, whether or not such right is reduced to judgment, liquidated,

---

the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties. Unless the court orders otherwise, the moving party may file a reply within 14 days after the response is served.

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").   In the adversary proceeding, the Debtor sought to identify "the real party in interest" and for this Court "to value claims pursuant to Bankruptcy Rule 3012, and Code Section 506," yet at the outset of the case, the Debtor and Attorney Brearley did not properly list Orca whose foreclosure action precipitated the commencement of his case, Knox who conducted the foreclosure sale the Debtor maintains is void, or Goduti.  All should have been listed as the holders of claims, albeit claims that might be contingent, unliquidated, and/or disputed.

Specifically, on his petition, the Debtor claimed his debts were primarily consumer debts when they were not.  On Schedule A/B, he failed to disclose the nature of his ownership interest in the Lynn Property, namely as Trustee of the Charles G. Reither Realty Trust.  Through his Chapter 13 plans, the Debtor, with the assistance of Attorney Brearley, improperly treated and/or omitted claims of his creditors. Moreover, it would appear from the documents attached to the Debtor's own Complaint that Goduti had a second mortgage on the Lynn Property that was not assigned to Knox and that Orca was claiming an interest in the Lynn Property, having obtained a Foreclosure Deed from Knox as well as a transfer of the $30,000.00 Commercial Promissory Note, and was advancing a claim that the Foreclosure Deed operated as an assignment of the June 24, 2013 mortgage.  Indeed, Orca had unsuccessfully sought to evict the Debtor from the Lynn Property and was attempting to foreclose the first mortgage originally granted to Goduti at the time of the commencement of the case.  The Debtor, however, did not list Orca as

a contingent creditor when he filed the matrix, although it clearly was asserting a claim against his interest in the Lynn Property.

The Debtor, correctly in view of the decision of the Massachusetts Supreme Judicial Court in U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 (2011),[22] and the judgment of the Northeast Housing Court, alleged in his Complaint that the foreclosure sale conducted by Knox on November 2, 2016 was void.  The "Declaratory Requests" in Count 1 and II, however, could have, but did not specifically contain, claims for a declaratory judgment based upon the attached defective foreclosure notices and a claim that Orca's position that the Foreclosure Deed operated as an assignment was legally untenable. Rather, the declaratory relief requested by the Plaintiff was based solely on the Northeast Housing Court decision and its alleged res judicata effect, although "res judicata" is not a claim for relief.

---

[22] The decision in Ibanez provides ample support for the Debtor's assertion that the foreclosure sale was void.  In Ibanez, the Supreme Judicial Court stated:  "we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void.'" 458 Mass. at 646.  Additionally, it stated:  "where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage.  Id. at 53-54.  Finally, the Supreme Judicial Court held that the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage."  Id. at 54. In the instant case, Orca bought the Property for $141,000.00 and obtained a Foreclosure Deed.  It then acquired the note.  Even if the foreclosure sale was void, Knox and Orca maintain that the Foreclosure Deed operated as an assignment of the mortgage for $141,000.00 and the mortgage remained extant.  They further contend that Orca, after obtaining the $30,000.00 note, could assert any and all rights that Knox had, including initiating another foreclosure sale.

While the foreclosure sale conducted by Knox may have been void, the Northeast Housing Court order did not purport to void that mortgage or any other mortgages on the Lynn Property, a circumstance that the Debtor and Attorney Brearley did not even attempt to address, particularly when filing the Debtor's Second Amended Chapter 13 plan pursuant to which the Debtor sought to modify the first mortgage on the Lynn Property and pay Knox nothing. Although the foreclosure sale may have been void, the mortgage itself was not. The Debtor owed either Knox or Orca pursuant to the $30,000.00 note secured by the June 24, 2013 mortgage. The Debtor's Second Amended Plan, which was filed after the proof of claim bar date of February 27, 2018 and the surrogate proof of claim bar date of March 29, 2018, *see* MLBR Appendix 1, Rule 13-13(b), thus was interposed for an invalid purpose as it was not confirmable on its face where the mortgage liens remained extant and the Debtor proposed to pay nothing to the mortgage lien holders. In the absence of timely filed proofs of claim, surrogate or otherwise, Goduti, Knox, and Orca could not be paid under any Chapter 13 plan the Debtor proposed. Unquestionably, however, the Debtor did not, as a result of the void foreclosure sale, become the sole owner of an unencumbered property in Lynn owing nothing to Goduti, Knox, or Orca. Because of deficiencies in the Chapter 13 case, in particular the absence of timely filed claims, regardless of whether they were contingent, unliquidated and/or disputed, and because the Complaint was filed after the bar date and so poorly pled as to be almost unintelligible, the Debtor was barred at the outset from obtaining any relief and his Complaint thus needlessly and egregiously caused consternation and delay exacerbated by defective service.

34

To recapitulate, the Debtor had an obligation in filing his matrices, Schedules, plans, and Complaint to recognize Goduti's secured claim and the competing secured claims of Orca and Knox, even if he disputed them and even if one or the other was contingent and subject to potential disallowance. The failure to pay proper attention to the integrity of the documents filed in the main case compounded the problems associated with the Complaint and the ramifications stemming from complicated and poorly drafted mortgages and other documents, and the void foreclosure sale. Thus, the deficiencies associated with the filings in the main case magnified the deficiencies and futility of the Complaint filed by Attorney Brearley on the Debtor's behalf.

The Court concludes that while the Debtor and Attorney Brearley may have had the subjective intent to save the Debtor's home, there can be no excuse for their "empty heads" in commencing a bankruptcy case and adversary proceeding replete with material substantive and procedural errors and omissions. *See* In re Hermosilla, 450 B.R. at 290. The Court further concludes that sanctions are appropriate under Rule 9011(c) as the Debtor and Attorney Brearley did not conduct a reasonable inquiry into the facts and the law under the totality of the circumstances and knowingly or recklessly filed an unfounded Complaint.

Because the Debtor's Complaint contained no specific request for relief relative to Goduti, and because the Debtor did not properly list Goduti as a creditor so as to provide him with adequate notice of the bankruptcy case, the Court awards Goduti sanctions in the sum of $1,400.00. With respect to Knox's Motion for Sanctions, the Court awards Knox sanctions in the sum of $9,921.38 plus the $18,439.87 surplus identified in the Barsh

35

and Cohen, P.C. January 20, 2017 letter to Knox.  The itemization of fees and expenses

attached to Attorney Gilberti's affidavit contains adequate detail for this Court to

determine that the fees and expenses were necessary and reasonable under the

circumstances.[23]

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Motion for

Sanctions filed by Philip Goduti and the Motion for Sanctions filed by Peter L. Knox,

individually and in his capacity as Trustee of the Peter L. Knox Pension Realty Trust.

Because sanctions are warranted under Fed. R. Bankr. P. 9011, the Court need not

determine whether they would be appropriate under 28 U.S.C. § 1927 or pursuant to this

Court's inherent authority.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  October 25, 2018

---

[23] In this regard, Barsh and Cohen, P.C.'s letter to the Debtor disclosed an $18,439.87
surplus from the foreclosure sale. That sum, together with $9,921.38 equals the amount
requested by Knox for legal fees and expenses.